# HENRY JACKSON v. GEORGE H. CHASE, W. A. Rutledge, and Levi Lewis, Copartners, Doing Business as Kenmare Brick & Coal Company.

## (144 N. W. 235.)

Plaintiff was injured in a lignite coal mine near Kenmare, North Dakota, through the falling of a mass of clay from the roof of the room where he was working. He was a man forty-two years of age, of fair intelligence, and who had worked for about a year in that one mine. He sues for damages, claiming that the injury was occasioned through the incompetency of the pit boss or foreman of the mine. Defendants deny negligence upon their part that contributed to the injury, and allege that the plaintiff was himself guilty of contributory negligence. Evidence examined, and *held*:

**Evidence — sufficiency — findings of jury.**

1. That there was sufficient evidence showing the incompetency of the pit boss to support the findings of the jury in that particular.

**Evidence — uncertainty of — jury — accident.**

2. That, owing to the uncertainty of the evidence regarding the position of plaintiff at the time he was injured, it was impossible for the jury to say whether or not the accident was occasioned as the result of any act of the pit boss, and that a new trial would be necessary for this reason alone, were it not that the third holding disposed of the case.

**Plaintiff — duty to examine premises and remedy defects — negligence — judgment notwithstanding verdict.**

3. It is argued for the first time in this court that the trial court instructed he worked and discover and remedy any defects in the same. According to plaintiff's own testimony he took no such precaution upon the morning of the accident, but entered the room and went to work, although he had fired a blast of powder in the same room when he left upon the previous evening. Under those circumstances, this constituted such negligence upon his part as will preclude his recovering in the action. Trial court directed to enter an order for judgment in favor of the defendants notwithstanding the verdict.

Opinion filed November 15, 1913. Rehearing denied December 15, 1913.

Note.—As to the qualification of the liability of an employer by servant's duty to acquaint himself with his environment, see note in 41 L.R.A. 125. And on the contributory negligence of a servant in failing to remember dangerous conditions, see note in 41 L.R.A.(N.S.) 79.

Appeal from the District Court of Ward County, *Leighton,* J. Reversed.

*Palda, Aaker, & Greene,* for appellants.

The only vital question on this appeal is the negligence of the plaintiff. This question is determined by a consideration of the facts and conditions existing at the time of the accident, of which the plaintiff knew or ought to have known when he acted or omitted to act. Pittsburgh & W. Coal Co. v. Estievenard, 53 Ohio St. 43, 40 N. E. 725; Rush v. Coal Bluff Min. Co. 131 Ind. 135, 30 N. E. 904; 26 Cyc. 1252–1254, and note 42; Petaja v. Aurora Iron Min. Co. 106 Mich. 463, 32 L.R.A. 435, 58 Am. St. Rep. 505, 64 N. W. 335, 66 N. W. 951; Narramore v. Cleveland, C. C. & St. L. R. Co. 48 L.R.A. 68, 37 C. C. A. 501, 96 Fed. 298; Lammey v. Center Coal Min. Co. 144 Iowa, 640, 123 N. W. 356; Williams v. Norwood-White Coal Co. 146 Iowa, 489, 125 N. W. 232; Oleson v. Maple Grove Coal & Min. Co. 115 Iowa, 74, 87 N. W. 736; Butte v. Pleasant Valley Coal Co. 14 Utah, 282, 47 Pac. 77; Coal & Min. Co. v. Clay (Consolidated Coal & Min. Co. v. Floyd) 51 Ohio St. 542, 25 L.R.A. 848, 38 N. E. 613.

The court's instructions to the jury as to the qualifications of the pit boss were wholly improper, because they related to a matter wholly immaterial. It is the duty of the court to instruct as to the law upon every material issue in the case. Moline Plow Co. v. Gilbert, 3 Dak. 252, 15 N. W. 1; Forzen v. Hurd, 20 N. D. 42, 126 N. W. 224.

Where there is no probability from the record, that needed corrections in the proof can be made or supplied on another trial, judgment should be ordered for defendants. Meehan v. Great Northern R. Co. 13 N. D. 432, 101 N. W. 183; Richmire v. Andrews & G. Elevator Co. 11 N. D. 453, 92 N. W. 819.

*Francis J. Murphy, G. S. Wooledge, George A. McGee,* for respondent.

A duty which the master can never delegate nor escape is that of selecting competent servants and employees. Rev. Codes 1905, § 5544; Labatt, Mast. & S. p. 193a; 26 Cyc. 1294, and cases cited.

The competency or incompetency of the pit boss may best be measured by considering the nature of his duties. Following this method, the master should use a degree of care in the selection of an overseer or boss commensurate with his duties. 26 Cyc. 1297, and case cited;

Robbins v. Lewiston, A. & W. Street R. Co. 107 Me. 42, 30 L.R.A. (N.S.) 109, 77 Atl. 537, Ann. Cas. 1912C, 96, and note; Pfudl v. F. J. Romer Sons, 107 Minn. 353, 120 N. W. 303.

Plaintiff had the right to assume that Fry, the pit boss, was a capable man for his work, and to act on such assumption. Rev. Codes 1905, § 5552.

The plaintiff was acting wholly and under the immediate direction of his superior, and with expressed assurance of safety. Umsted v. Colgate Farmers' Elevator Co. 18 N. D. 309, 122 N. W. 393; Choctaw, O. & G. R. Co. v. Jones, 77 Ark. 367, 4 L.R.A.(N.S.) 837, 92 S. W. 244, 7 Ann. Cas. 435; Houston, E. & W. T. R. Co. v. De Walt, 96 Tex. 121, 97 Am. St. Rep. 884, 70 S. W. 531.

BURKE, J. During the time hereinafter mentioned, defendants owned and operated a lignite coal mine near Kenmare in this state, and plaintiff was in their employ as a common miner. This mine was operated through rooms located parallel to each other, 30 feet apart, and all opening into a main hall way or shaft. When it was found necessary to open a new room a tunnel was made off of the main shaft and at right angles thereto, 30 feet beyond the last room, which tunnel was usually something over 30 feet in length. The vein of coal was about 3 feet in thickness, but in order to accommodate the car or truck the tunnel was dug somewhat deeper than the layer of coal. After the tunnel was completed and a track laid therein, the miner would commence at the right-hand side and about 8 feet from the entrance and extract the coal, thus creating a room upon his right-hand side. As the coal was extracted, timber props would be placed in this room to support the roof. This right-hand side of the room was known as the "gob" side, while the left-hand side, which was not disturbed, was known as the "pillar," and the further end of the room was called the "face." After the gob side of the room had been worked as close to the adjoining room as it was considered safe, the miner was supposed to work at the face end of the pillar side of his room, and rob the pillar by extracting as much of the coal as he safely could while retreating towards the entry of his room. It was also his duty to remove the timbers from the gob side as he retreated, and it was expected that the roof of the mine would then settle and fill up the room. During

26 N. D.—24.

this process it was the duty of the miner to protect himself as best he could and at the same time extract as much as possible of the wall of coal between the several rooms. Plaintiff had been employed in this mine for a period of about a year, and had mined something less than 600 tons of coal at the time of his injury. He was a man forty-two years of age, who had had considerable experience as a machinist, and seems of fair intelligence. He was working under the direction of a pit boss or foreman, whose duty it was to look after the work of all the miners, see to the laying of the tracks, watch the proper supporting of the roof, and see that the coal loaded was clean. It was the duty of each miner to so timber his own room while working towards the face, so that the roof would be supported, and to protect himself while robbing the pillar and extracting the timbers. Just prior to the injury the pit boss directed plaintiff to begin robbing the pillar in the reverse manner to that usually employed, i. e., by beginning at the entry of the mine and working towards the face. Plaintiff started to extract a "v" shaped portion of the pillar or left-hand side of his room, beginning at the entry of the mine and widening to reach the face of the mine. After he had extracted coal to about 10 feet of the face, he prepared a blast of powder and caused the same to be exploded about 5:30 in the evening, and left the mine until the next morning about 8:30. At that time he entered the mine, pushed his car to the far end of the track, and was standing a few feet from the face of the mine on the car track, or between the car track and the rib side of the room, shoveling coal into the car, when a piece of clay broke loose from the roof, struck him upon the back, and caused his injury. He alleges that the defendants were negligent in employing an incompetent pit boss, and that it was on account of the erroneous method of robbing the pillar that he was injured. The defendants insist that the pit boss had nothing whatever to do with the plaintiff's injury, but that the injury was occasioned through plaintiff's own negligence, or at least that plaintiff's negligence contributed thereto to such an extent as to prevent recovering.

(1) The first question under consideration is whether or not the pit boss was incompetent. Upon this question we think that there is sufficient evidence to justify the jury in holding that person incompetent.

(2) The next question arising is whether the plaintiff's injury was occasioned through any act of the pit boss. The evidence is not as clear as we would wish upon the question of the exact location of plaintiff at the time of his injury. After careful consideration of all the evidence, the different members of this court have been unable to agree upon this important point. The plaintiff himself has testified that he was loading coal that had been knocked down by the blast made the evening before. He has also testified that he was at the face of the room shoveling some loose coal into the car. He has also testified that the portion of the rib which remained unrobbed was about 10 feet in length. It is thus impossible to locate the distance of the falling clay from the unsupported roof at the place where the pillar had already been robbed. It is plain that plaintiff must show not only that the pit boss was incompetent, but that the robbing of the pillar in this erroneous manner caused the clay to fall from the roof. As the evidence stands, there is as much reason to believe that the clay fell on account of the explosion of the powder or from some inherent weakness of the roof, as from the presence of the room created by plaintiff while robbing the pillar. Thus, the verdict of the jury must have been upon conjecture merely, and not upon evidence. For this reason alone it was the duty of the trial court to order a new trial. In view of the fact that this evidence might be supplied at a new trial, we might possibly allow the plaintiff another chance were it not for the next assignment of error, which we believe entirely disposes of the case.

(3) This brings us to the third and last contention of the defendants, that the negligence of the plaintiff has contributed to his injury in such a way as to prevent his recovering. For this purpose we shall consider only the evidence of the plaintiff and his witnesses. The plaintiff testified: "It was the business of the man who mined the coal in these separate rooms, each man to do his own timbering or propping." He testified that he had put in all of the timbers that he considered necessary. That he had put in and exploded the charge of powder the evening before, and that when he went to work the following morning he did not make any inspection of the walls or the roof to see that they were all right before he started to work. He testified that he did sometimes tap around to see that everything was all solid, but that he had not done it upon this occasion.

He was also asked this question:

Q. Now, you knew that it was your business to keep the roof protected by props, didn't you?

A. Yes, sir.

Q. How would you know when to put them up if you did not examine the roof?

A. After you would go such a distance you would have to put them up. We put them up for safety, I suppose.

Q. You say sometimes you did tap the roof to see if it was all right?

A. Once in a great while.

Q. If there was to be any jar or injury . . . it would be pretty likely to happen shortly after the shot, wouldn't it?

A. Not always, no.

Q. What else would start it?

A. The heft of the roof coming down, I suppose. I don't know.

Again he was asked:

Q. Why didn't you put the timbers up there after you had fired that shot and cleaned out the coal?

A. There was no need of timbers. I did not have any to put up either.

Q. What do you mean by testifying yesterday that three or four days before, when Mr. Fry was in this room and directed you where to work, that you told him that it was dangerous to do that?

A. That is when he put me to pull the pillar off.

One Egge, a witness for plaintiff, testified that he was in plaintiff's room just before the accident and saw two timbers lying on the clay in the gob side of the room, and that he had a conversation with plaintiff as follows: "I spoke a few words to him concerning the timber; I said to him, you had better put up a timber. I was probably talking with him a minute, maybe half a minute, I could not say how long, but it is a fact that I said to him, you had better put up a timber; he said he was going to as soon as he got around to it; it was about five or ten minutes after that that I heard him call or cry. . . . When I went in there before he was hurt that particular place was not in proper shape to put up the timber; it would be necessary to dig a

little clay so that the timber could be put in; that would take about fifteen or twenty minutes to do that." There is considerable evidence in the case which we are unable to set out in this opinion, but from a careful reading of the same we have reached the conclusion that plaintiff was negligent regardless of the incompetency of the pit boss. He was negligent in going into this room without sounding the roof to ascertain whether or not the same was dangerous, and he was clearly negligent in not investigating the roof at the time his witness Egge called his attention to the necessity for the timber. Plaintiff has entered a sort of denial to Egge's testimony in this particular, but it is not an emphatic denial, and not sufficient, we think, to overcome the testimony of his own witness. Being himself guilty of negligence which contributed to his injury, it is impossible, of course, for the jury to proportion the damage between the plaintiff and the defendants, and under the well-established rules of law plaintiff cannot recover. For this reason the trial court should have ordered judgment for the defendants notwithstanding the verdict, as asked by the defendants, and for this reason the judgment of the lower court is reversed with instructions to grant such motion at this time.